# In the United States Court of Federal Claims

No. 13-185C

Filed: September 30, 2013

| | |
|---|---|
| ************************************* <br> * <br> SPERIENT CORPORATION, INC., * <br> * <br>       Plaintiff, * <br> * <br> v. * <br> * <br> THE UNITED STATES, * <br> * <br>       Defendant. * <br> * <br> ************************************* | Contract Disputes Act, 41 U.S.C. §§ 601–13 <br>    (now codified at 41 U.S.C. §§ 7101–09); <br> Federal Acquisition Regulations <br>    48 C.F.R. pt. 31 (Contract Cost Principals <br>      and Procedures); <br>    48 C.F.R. subpt. 31.2 (Contracts with <br>      Commercial Organizations); <br>    48 C.F.R. § 52.233-1 (Disputes); <br>    48 C.F.R. § 52.216-7 (Allowable Cost and <br>      Payment); <br> Jurisdiction (RCFC 12(b)(1)); <br> 15 U.S.C. § 638(a)–(e) (Small Business <br>    Innovation Research Program). |

**Cyrus E. Phillips IV**, Albo & Oblon, L.L.P., Arlington, Virginia, Counsel for Plaintiff, Sperient Corporation, Inc.

**Antonia R. Soares**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

### MEMORANDUM OPINION AND FINAL ORDER

**BRADEN,** *Judge*.

Sperient Corporation ("Sperient") seeks redress for the alleged breach of three cost plus fixed-fee military contracts awarded under Phase II of the Small Business Innovation Research ("SBIR") Program[1] for the performance of research and development activities. The issue before the court is whether the SBIR contracts are procurements, thereby requiring Sperient to

---

[1] The SBIR Program requires that federal agencies dedicate a portion of their research and development funding to small businesses using a three phase process. *See* 15 U.S.C. § 638. The first phase establishes the "scientific and technical merit and feasibility of ideas that appear to have commercial potential." *Id.* § 638(e)(4)(A). The second phase "further develop[s] proposals which meet particular program needs." *Id.* § 638(e)(4)(B). The third phase uses non-SBIR funding to develop "commercial applications of SBIR-funded research and development" or "products or services intended for use by the Federal Government, by follow-on non-BIAR Federal funding awards" or "the continuation of research or research and development that has been competitively selected using peer review or scientific review criteria." *Id.* § 638(e)(4)(C).

comply with the Contract Disputes Act, 41 U.S.C. §§ 601–13 (2006) (now codified at 41 U.S.C. §§ 7101–09) ("CDA").[2]

## I. RELEVANT FACTS.[3]

Over the course of three years, the United States Department of the Army, Department of the Air Force, and the Marine Corps (collectively, the "Military Departments") awarded Sperient a series of SBIR contracts. Compl. ¶ 1. On April 4, 2007, the United States Army Aviation and Missile Command, Restone Arsenal, Alabama, awarded Sperient Contract number W31P4Q-07-C-0206. Compl. ¶ 6; Gov't Ex. 3 at A35. On May 23, 2008, the United States Department of the Air Force, Eglin Air Force Base, Florida, awarded Sperient Contract number FA8651-08-C-0135. Compl. ¶ 6; Gov't Ex. 2 at A6. On August 27, 2009, the United States Marine Corps Systems Command, Quantico, Virginia, awarded Sperient Contract number M67854-09-C-6544. Compl. ¶ 6; Gov't Ex. 4 at A61.

These contracts incorporate three provisions of the Federal Acquisition Regulation ("FAR"): "Contract Cost Principles and Procedures" (FAR Part 31); "Contracts with Commercial Organizations" (FAR Subpart 31.2); and the "Allowable Cost and Payment" provision, 48 C.F.R. § 52.216-7. Compl. ¶ 2.

The Military Departments, however, refused to reimburse various costs incurred by Sperient, as required under the contracts. Compl. ¶ 3.

In a September 12, 2012 letter, the Defense Contract Audit Agency ("DCAA") "disallowed the indirect costs incurred . . . by Sperient." Compl. ¶ 11. On December 20, 2012, Sperient provided the DCAA with "additional detail supporting the direct costs incurred . . . for lease of a radar range." Compl. ¶ 11. DCAA took no action on Sperient's December 20, 2012 submission within sixty days. Compl ¶ 11.

## II. PROCEDURAL HISTORY.

On March 11, 2013, Sperient filed a Complaint in the United States Court of Federal Claims ("Comp."). The Complaint alleged four separate breaches of the SBIR Contracts, as a result of DCAA's failure to reimburse Sperient for direct and indirect costs. Specifically, the March 11, 2013 Complaint alleges that Sperient incurred costs for: equipment rental (Count I, Compl. ¶¶ 28–30); radar range rental (Count II, Comp. ¶¶ 31–33); office rental (Count III,

---

[2] On January 4, 2011, Congress amended certain provisions of the CDA, and recodified the Act, as amended, at 41 U.S.C. §§ 7101–09. *See* Public Contracts Act of Jan. 4, 2011, Pub. L. No. 111-350, § 3, 124 Stat. 3677, 3816–26. Although the Public Contracts Act repealed 41 U.S.C. §§ 601–13, any "rights and duties that matured, penalties that were incurred, and proceedings that were begun before the date of enactment of [the 2011] Act" are still governed by these sections of the United States Code. *See* Pub. L. No. 111-350, § 7(b), 124 Stat. at 3855.

[3] The relevant facts were derived from the March 11, 2013 Complaint; exhibits in the Appendix to the Government's July 9, 2013 Motion To Dismiss ("Gov't Ex. 1–5"); and Sperient's September 26, 2013 Response Appendix ("Pl.'s Resp. App. 1–3").

Compl. ¶¶ 34–36); and other indirect costs (Count IV, Compl. ¶¶ 37–39). Sperient seeks $632,765 in damages of for indirect costs incurred in fiscal years 2007 through 2011 and $168,750 for direct costs related to the leased radar range incurred in fiscal years 2007 through 2010, for a total of $801,515. Compl. ¶ 1.

On July 9, 2013, the Government filed a Motion To Dismiss, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), for lack of subject matter jurisdiction. In an Appendix, the Government included the three SBIR Contracts at issue.

On August 6, 2013, Sperient filed a Response. On August 23, 2013, the Government filed a Reply.

On September 24, 2013, the court held a telephone status conference to request additional information about the nature of the contracts at issue. On September 25, 2013, the Government filed a supplemental brief. On September 26, 2013, Sperient filed an Unopposed Motion To Amend its Response to include appendices to the Technical Proposals for the contracts at issue.

### III. DISCUSSION.

#### A. Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . the Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976) (citations omitted). Therefore, to satisfy the jurisdictional requirements of the Tucker Act, a plaintiff must identify and plead a constitutional provision, federal statute, independent contractual relationship, and/or executive agency regulation that provides a substantive right to money damages. *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act itself."); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act . . . does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages. In the parlance of Tucker Act cases, that source must be 'money-mandating.'").

The plaintiff in a case challenging a government contract also must establish compliance with the mandatory requirements of the CDA. The CDA authorizes the United States Court of Federal Claims to adjudicate claims for monetary damages arising from "any express or implied contract . . . made by an executive agency for . . . (2) the procurement of services." 41 U.S.C. § 7102(a)(2). In order for the court to have jurisdiction under the CDA, a plaintiff must have submitted a written and certified claim to the relevant contracting officer ("CO") and

obtained a final decision on the claim. *See M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (holding that CDA jurisdiction "requires both a valid claim and a contracting officer's final decision on that claim"). Although the CDA does not define the term "claim," the United States Court of Appeals for the Federal Circuit has stated that a "claim" is a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain." *England v. The Swanson Grp., Inc.*, 353 F.3d 1375, 1379 (Fed. Cir. 2004) (quoting FAR 2.201).

For claims over $100,000, Congress also requires that "the contractor . . . certify that (A) the claim is made in good faith; (B) that the supporting data are accurate and complete to the best of his knowledge and belief; (C) that the amount requested accurately reflects the contract adjustment for which the contractor believes the [G]overnment is liable; and (D) that the certifier is duly authorized to certify the claim on behalf of the contractor." 41 U.S.C. § 7103(b)(1)(A)–(D). In addition, for claims over $100,000, a failure to "issue a decision" or "notify the contractor of the time within which a decision will be issued" within sixty days of receipt of the claim is "deemed to be a decision by the [contracting officer] denying the claim." 41 U.S.C. § 7103(f)(2) and (f)(5).

For the reasons discussed herein, the court has determined that it does not have subject matter jurisdiction to adjudicate the claims set forth in the March 11, 2013 Complaint.

### B. Standing.

The United States Supreme Court has held that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing must be determined "as of the commencement of suit." *Rothe Dev. Corp. v. Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005). The party invoking federal jurisdiction bears the burden of establishing standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Specifically, "a plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180–81 (2000) (internal citations omitted).

The March 11, 2013 Complaint alleges that Sperient has suffered an "injury in fact" that is concrete and particularized, traceable to the Military Departments' failure to reimburse Sperient for incurred costs related to each of the respective SBIR contracts, and that the injury would be redressable by a favorable decision in this case. Compl. ¶¶ 28–39. Accordingly, the court has determined that standing is not a bar in this case.

### C. Standard Of Review For A Motion To Dismiss Pursuant To RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) (allowing a party to assert, by motion, "lack of subject-matter jurisdiction"). When considering

whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations of the complaint to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). *But see Ashcroft v. Iqbal*, 556 U.S. 662, 678 ("[T]he tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions."). Nonetheless, the plaintiff must establish jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

> **D. Whether The Court Has Jurisdiction To Adjudicate Plaintiff's Breach Of Contract Claims Arising From SBIR Phase II Contracts, Where The Claims Were Not First Submitted To The Relevant Contracting Officer, As Required By The Contract Disputes Act.**
> **1. The Government's Argument.**

The Government argues that the three SBIR contracts at issue are subject to the CDA, requiring Sperient to first obtain a final decision by a CO as to any certified claims before the United States Court of Federal Claims has jurisdiction to adjudicate the merits of a contract dispute. Gov't Mot. 9 (citing 41 U.S.C. §§ 7103(a)(1), 7104). The Government presents several supporting arguments. First, each of Sperient's SBIR Phase II contracts includes specific contract language incorporating FAR 52.233-1. Gov't Mot. at 8.[4]

Second, although Sperient's March 11, 2013 Complaint challenges the application of certain DCAA cost-accounting standards under the Tucker Act, such disputes require the CO to issue a final decision before the United States Court of Federal Claims has jurisdiction to adjudicate these claims. Gov't Mot. 9 (quoting 28 U.S.C. § 1491(a)(2)).[5]

Third, a "procurement" for purposes of the CDA is an "acquisition . . . of property or services for the *direct benefit or use* of the Federal Government." Gov't Reply 2 (quoting *Wesleyan Co. v. Harvey*, 454 F.3d 1375, 1378 (Fed. Cir. 2006) (emphasis in original)). Pursuant

---

[4] FAR 52.233-1(a) requires the contract to include the clause, "this contract is subject to the Contract Disputes Act of 1978, as amended." 48 C.F.R. § 52.233-1.

[5] 28 U.S.C § 1491(a)(2) provides, in relevant part:

> The [United States] Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41, including a dispute concerning . . . compliance with cost accounting standards[.]

28 U.S.C § 1491(a)(2).

to FAR 35.003(a)[6] and 37.101,[7] research and development contracts are service contracts and necessary, where "the principal purpose is the acquisition of supplies or services for the direct benefit or use by the Federal Government." Gov't Reply 3. Moreover, contrary to Sperient's contentions, the SBIR contracts at issue are to acquire research, development, and prototypes that directly will benefit the Military Departments. Gov't Reply 3–4.

Fourth, because the SBIR Phase II contracts required deliverables in the form of prototypes, they are procurement contracts. Gov't Supp. Br. 1–3 (citing evidence from the Technical Proposals); *see also* Gov't Supp. Br. 3 (citing *Wesleyan Co.*, 454 F.3d at 1378–79). Because "'procurement' includes all stages of the process of acquiring property or services," research and development leading to a prototype fall within the definition of "procurement." Gov't Supp. Br. 3 (quoting *Rockies Express Pipeline LLC v. Salazar*, Nos. 2012-1055, 2012-1174, ___ F.3d ___, 2013 WL 4865143, at *4 (Fed. Cir. Sep. 13, 2013)).

### 2. Plaintiff's Response.

Sperient concedes that it did not first submit its claims to the responsible CO, but instead filed its claims directly with the United States Court of Federal Claims. Pl. Resp. 9. But, Sperient asserts that the CDA does not apply to the SBIR Phase II contracts at issue here, but rather 28 U.S.C. § 1491(a)(1). Pl. Resp. 10.

A key part of Sperient's argument focuses on the perceived difference between a procurement contract for the delivery of services and one requiring the performance of services. Pl. Resp. 12. Sperient suggests that the difference is that, the SBIR Phase II contracts that Sperient performed provided services that indirectly benefited the Military Departments, as well as the general public. In contrast, a procurement contract is one that only directly benefits the Government. Pl. Resp. 13. Research and development undertaken pursuant to SBIR Phase II contracts "concern *ideas* which have commercial potential . . . not *procurements* for the direct benefit of the United States." Pl. Resp. 14 (quoting *Night Vision Corp v. United States*, 469 F.3d 1369, 1371 (Fed. Cir. 2006) (emphasis in original); *see also R&D Dynamics Corp. v. United States*, 80 Fed. Cl. 715, 716, 720–21 (2007)*, aff'd per curiam* 309 F. App'x 388 (2009) (determining that a SBIR Phase II contract was not a procurement in a bid protest).

More importantly, the jurisdiction of the United States Court of Federal Claims cannot be altered by contract. Pl. Resp. 18. Therefore, the SBIR Phase II contracts at issue do not impose the requirement of submitting a claim to a CO and cannot circumvent the Tucker Act jurisdiction of the United States Court of Federal Claims. Pl. Resp. 19.

---

[6] FAR 35.003(a) provides: "Contracts shall be used only when the principal purpose is the acquisition of supplies or services for the direct benefit or use of the Federal Government." 48 C.F.R. § 35.003(a).

[7] FAR 37.101 provides: "[S]ervice contracts . . . include . . . [r]esearch and development." 48 C.F.R. § 37.101.

### 3. The Court's Resolution.

The jurisdictional issue in this case is whether the SBIR Phase II contracts are procurement contracts. If so, the court's jurisdiction lies in 28 U.S.C. § 1491(a)(2). *See also* 41 U.S.C. § 7104(b) (allowing for appeal of a decision of a CO in the United States Court of Federal Claims); 41 U.S.C. § 7103 (setting forth procedures for submitting a claim to a CO for a decision). As an initial matter, parties cannot affect a federal court's jurisdiction by contract. *See Ins. Corp. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court."); *see also VanDesande v. United States*, 673 F.3d 1342, 1350 (Fed. Cir. 2012) (describing the "well-established rule" that parties cannot alter a federal court's subject matter jurisdiction). Therefore, any express references to the CO or FAR in the three SBIR Phase II contracts do not control the court's subject-matter jurisdiction.

Several cases cited by Sperient are persuasive, but not binding. For example, in the context of a bid protest, the United States Court of Federal Claims determined that the court did not have jurisdiction to adjudicate claims arising from a Phase II SBIR award concerning a prototype, because the award was not a "procurement." *See R & D Dynamics Corp.*, 80 Fed. Cl. at 724. But, in that case, however, the Source Selection Plan explicitly stated that the program is not a procurement. *Id.* at 721. Furthermore, *R & D Dynamics Corp.* is not precedential.[8]

Likewise, in *Thermalon Industries, Ltd. v. United States*, 51 Fed. Cl. 464 (2002), the United States Court of Federal Claims determined that a SBIR Phase II grant by the National Science Foundation was not a procurement contract. *Id.* at 470–71. *Thermalon Industries, Ltd.*, however, involved what the court in that case characterized as a "grant." *Id.* at 470 ("[T]he grant at issue is not covered by the CDA[.]"). In contrast, Sperient has not alleged any facts to suggest that the Military Departments considered that the SBIR Phase II contracts at issue here were grants, with no direct military benefits. In any event, the parties in *Thermalon* also agreed that the SBIR Phase II award was not a procurement contract. *Id.*

And, in the court's view, Sperient's reliance on *Night Vision Corp.* is misplaced, because the issue in that case was whether the successful completion of SBIR Phase I and Phase II contracts entitled the contractor to a Phase III contract. *See* 469 F.3d at 1372–73. In rejecting that result, the United States Court of Appeals for the Federal Circuit did not reach the issue of whether the contracts at issue were in fact procurement contracts. Our appellate court's opinion, however, repeatedly referred to the Phase III process as a "competitive procurement process." *See, e.g.*, *Night Vision Corp.*, 469 F.3d at 1372 (describing that the Air Force ultimately decided to have a "competitive procurement" for Phase III).

In this case, the parties agree that the contracts at issue would result in a deliverable prototype. Pl. Supp. App. 56 ("Under this proposed Phase 2 effort, Sperient will develop and

---

[8] Although the United States Court of Appeals for the Federal Circuit affirmed *R & D Dynamics Corp.*, it did so in a nonprecedential *per curiam* decision without opinion. *See R & D Dynamics Corp. v. United States*, 309 F. App'x 388 (2009); *see also* U.S. Ct. App. Fed. Cir. R. 32.1(d) (noting that nonprecedential dispositions will not be considered binding precedent).

deliver a complete prototype fuze solution package[.]"); Gov't Supp. Mot. 2 (same). The United States Court of Appeals for the Federal Circuit has held that a military purchase order for a prototype is a "procurement contract." *See Wesleyan Co.*, 454 F.3d at 1378 (holding that "the exchange of property for money," even in the context of prototype development, is a procurement).

Accordingly, the court has determined that the SBIR Phase II contracts in dispute are best construed as procurement contracts that require Sperient to obtain a final decision by the responsible CO, pursuant to the Contract Disputes Act. The March 11, 2013 Complaint does not allege that Sperient ever obtained a final decision and thus the claims must be dismissed for lack of subject matter jurisdiction. *See M. Maropakis Carpentry, Inc.*, 609 F.3d at 1327 (requiring a final decision by a contracting officer in order for the United States Court of Federal Claims to have jurisdiction under the Contract Disputes Act).

### IV.  CONCLUSION.

For the reasons stated above, the Government's July 9, 2013 Motion To Dismiss is granted. The Clerk of the Court is directed to dismiss the March 11, 2013 Complaint, without prejudice.

**IT IS SO ORDERED.**

s/Susan G. Braden
**SUSAN G. BRADEN**
**Judge**